**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| 3M COMPANY, | : | Civil Action No. |
| | : | **1:11-CV-01527-RLW** |
| | : | |
| Plaintiff, | : | |
| | : | |
| - v - | : | |
| | : | |
| HARVEY BOULTER, | : | |
| PORTON CAPITAL TECHNOLOGY FUNDS, | : | |
| PORTON CAPITAL, INC., LANNY DAVIS, | : | |
| LANNY J. DAVIS & ASSOCIATES, PLLC and | : | |
| DAVIS-BLOCK LLC, | : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### PLAINTIFF 3M COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTIONS TO STRIKE DEFENDANTS' SPECIAL MOTIONS TO DISMISS

Kenneth J. Pfaehler
David I. Ackerman
SNR DENTON US LLP
1301 K Street NW
Suite 600, East Tower
Washington, D.C.  20005-3364
Telephone:  (202) 408-6468
Facsimile:  (202) 408-6399

William A. Brewer III
Michael J. Collins
Kenneth N. Hickox, Jr.
Robert W. Gifford
BICKEL & BREWER
767 Fifth Avenue, 50th Floor
New York, New York  10153
Telephone:  (212) 489-1400
Facsimile:  (212) 489-2384

**ATTORNEYS FOR PLAINTIFF 3M COMPANY**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................8

II.   SUMMARY OF REPLY .......................................................................9

III.  ARGUMENT AND AUTHORITIES ..................................................10

    A.    The D.C. Council Lacked Authority To Pass The Act. .........................10

        1.    The Act is "with respect to" Title 11 of the D.C. Code and, therefore, is invalid pursuant to the HRA. ..................................11

        2.    3M's interpretation of the HRA should be accepted because it is the only one that gives meaning to the entire statute. ................................13

        3.    None of Respondents' cited authorities support their interpretation of the HRA. ...............................................................................14

        4.    The Act does not create a substantive immunity. .....................................17

    B.    The Act Must Be Construed To Provide Discovery Equal To That Provided By Federal Rule Of Civil Procedure 56. ................................21

    C.    The Anti-SLAPP Act Is Inapplicable To Claims That Do Not Involve Matters of Public Interest..........................................................................23

IV.   CONCLUSION AND REQUEST FOR RELIEF.............................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aeroplate Corp. v. Arch Ins. Co.*,
 CV- F 06-1099 AWI SMS, 2006 U.S. Dist. LEXIS 82180 (E.D. Cal. Nov. 8, 2006) ...........15

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)........................................................................................................15

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 250 (1986)................................................................................................15

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ....................................................................................12, 13

*Baxter Healthcare Corp. v. Weeks*,
 643 F.Supp.2d 111 (D.D.C. 2009) ....................................................................................6

*Benoit v. Frederickson*,
 454 Mass. 148 (Mass. 2009) ..........................................................................................13

*Bergman v. District of Columbia*,
 986 A.2d 1208 (D.C. 2010) ..........................................................................................6, 9

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
 448 F.Supp.2d 1172 (C.D. Cal. 2006) ............................................................................15

*Camina Services, Inc. v. Shell Oil Co.*,
 816 F.Supp.1533 (S.D. Fla. 1992) ....................................................................................5

*Cipollone v. Liggett Group, Inc.*,
 505 U.S. 504 (1992)..........................................................................................................5

*Crawford-El v. Britton*,
 523 U.S. 574 (1998)........................................................................................................14

*Davis v. Elec. Arts Inc.*,
 2011 U.S. Dist. LEXIS 71642 (N.D. Cal. July 5, 2011) (discovery stay in California's
 anti-SLAPP statute collides with Rule 56(d) and should not be applied)................................14

*Dimond v. District of Columbia*,
 792 F.2d 179 (D.C. Cir. 1986) ......................................................................................7, 8

*District of Columbia v. Sullivan,*
   436 A.2d 364 (D.C. 1981) .................................................................8

*Dyson v. Winfield,*
   113 F.Supp.2d 35 (D.D.C. 2000) ......................................................16

*Eklund v. City of Seattle Mun. Court,*
   410 Fed. Appx. 14 (9th Cir. 2010) (unpublished opinion) ...................10

*Elliott v. Federal Bureau of Prisons,*
   2006 U.S. dist. LEXIS 93258 (D.D.C. Dec. 27, 2006)..........................15

*Firemen's Ins. Co. of Washington, D.C. v. Washington,*
   483 F.2d 1323 (D.C. Cir. 1973) ("[T]he District government may 'make and enforce
   all such reasonable and usual police regulations . . . as [it] deem[s] necessary for the
   protection of lives, limbs, health, comfort and quiet of all persons and the protection
   of all property within the District of Columbia.'") ................................8

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
   63 F.Supp.2d 1127 (N.D. Cal. 1999) ................................................17

*Godin v. Schenks,*
   629 F.3d 79 (1st Cir. 2010)....................................................3, 15, 16

*Henry v. Lake Charles Am. Press, LLC,*
   566 F.3d 164 (5th Cir. 2009) ...........................................................15

*Hessey v. Burden,*
   584 A.2d 1 (D.C. 1990) .....................................................................8

*Hicks v. Cadle Co.,*
   355 Fed. Appx. 186 (10th Cir. 2009)...........................................11, 12

*Hometown Props. v. Fleming,*
   680 A.2d 56 (R.I. 1996) ...................................................................17

*In Defense of Animals v. Cleveland Metroparks Zoo,*
   785 F.Supp. 100 (N.D. Ohio 1991)......................................................5

*In re Bah,*
   321 B.R. 41 (9th Cir. 2005) .............................................................15

*Kahn v. Parsons Global Servs., Ltd.,*
   428 F.3d 1079 (D.C. Cir. 2005) ........................................................15

*Karousos v. Padee,*
   902 A.2d 263 (R.I. Sup. Ct. 2010) ...............................................11, 12

*Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP,*
  146 Cal. App. 4th 841 (Cal. App. 2d Dist. 2007) ..................................................17

*Language Line Servs. v. Language Servs. Assocs., LLC,*
  2011 U.S. Dist. LEXIS 124836 (N.D. Cal. Oct 13, 2011) ......................................17

*Liberal v. Estrada,*
  632 F.3d 1064 (9th Cir. 2011) ...............................................................................13

*Mann v. Quality Old Time Serv., Inc.,*
  120 Cal. App. 4th 90 (Cal. App. 4th Dist. 2004) ..................................................17

*Margolis v. Gosselin,*
  1996 Mass. Super. LEXIS 335 (Mass. Super. Ct. May 22, 1996)..........................17

*Martin v. Malhoyt,*
  830 F.2d 237 (D.C. Cir. 1987) ...............................................................................15

*Metabolife Int'l v. Warnick,*
  264 F.3d 832 (9th Cir. 2001) .................................................................................15

*Metzler v. Rowell,*
  547 S.E. 2d 311 (Ga. App. 2001)............................................................................17

*Meyer v. Amerada Hess Corp.,*
  541 F.Supp. 321 (D. N.J. 1982) ...............................................................................5

*Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim,*
  784 N.W.2d 834 (Minn. 2010)..........................................................................10, 12

*Mills v. Brown,*
  372 F.Supp.2d 683 (Dist. Ct. R.I. 2005) ...........................................................11, 12

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985)...............................................................................................14

*New.Net, Inc. v. Lavasoft,*
  356 F.Supp.2d 1020 (C.D. Cal. 2004) ...................................................................16

*New.Net, Inc., v. Lavasoft,*
  356 F.Supp.2d 1090 (C.D. Cal. 2004) ...................................................................17

*New York Studio, Inc. v. Better Bus. Bureau of Alaska,*
  2011 U.S. Dist. LEXIS 62567 (W.D. Wash. June 13, 2011)...................................17

*Nixon v. Haag,*
  2009 WL 2026343 (S.D. Ind. July 7, 2009)...........................................................14

*O.K. v. Bush*,
    377 F.Supp.2d 102 (D.D.C. 2009) ....................................................................................6

*Pennsylvania Vill. Assocs. v. McIntyre*,
    11 A.3d...........................................................................................................................10, 11

*Phillips v. Oklahoma Pub. Co.*,
    2011 U.S. Dist. LEXIS 119077 (W.D. Wash. 2011) ............................................................10

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008).........................................................................................................5

*Rodgers v. Home Shopping Network, Inc.*,
    57 F.Supp.2d 973 (C.D. Cal. 1999) ..................................................................................14

*Segaline v. Dep't of Labor & Indus.*,
    238 P.3d 1107 ...............................................................................................................10

*South Middlesex Opportunity Council, Inc. v. Town of Framingham*,
    2008 U.S. Dist. LEXIS 85764, 2008 WL 4595369 (D. Mass. 2008) ......................................14

*Stuborn Ltd. Partnership v. Bernstein*
    ,245 F.Supp.2d 312 (D. Mass. 2003) ................................................................................14

*Trudeau v. Consumeraffairs.com, Inc.*,
    2011 U.S. Dist. LEXIS 99852 (N.D. Ill. 2011) ................................................................11, 12

*Umana v. Swidler & Berlin, Chartered*,
    669 A.2d 717 (D.C. 1995) ................................................................................................8

*United States v. Galindo-Gallegos*,
    244 F.3d 78 (9th Cir. 2001) ..............................................................................................7

*United States v. Garner*,
    837 F.2d 1404 (7th Cir. 1987) ..........................................................................................7

*United States v. Harrell*,
    637 F.3d 1008 (9th Cir. 2011) ..........................................................................................7

*United States v. Herring*,
    602 F.2d 1220 (5th Cir. 1979) ..........................................................................................7

*United States v. Kassouf*,
    144 F.3d 952 (6th Cir. 1998) ............................................................................................7

*United States v. Monjaras-Castaneda*,
    190 F.3d 326 (5th Cir. 1999) ............................................................................................7

*United States v. Persichilli*,
   608 F.3d 34 (1st Cir. 2010) .........................................................................................7

*Vango Media, Inc. v. City of New York*,
   829 F.Supp. 572 (S.D.N.Y. 1993).............................................................................5

*Verna v. U.S. Suzuki Motor Corp.*,
   713 F.Supp. 823 (E.D. Pa. 1989) ..............................................................................5

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors*,
   2010 U.S. Dist. LEXIS 105497 (S.D. Cal. Oct. 4, 2010) .......................................16

*Wright Dev. Group, LLC v. Walsh*,
   939 N.E.2d 389 (Ill. 2010) ................................................................................10, 12

## STATUTES

735 Ill. Comp. Stat. ........................................................................................................12

27 Pa.C.S. § 8302............................................................................................................11

42 U.S.C. § 1983.......................................................................................................13, 14

Cal. Civ. Proc. Code § 425.16 ........................................................................................13

D.C. CODE § 1-206.02(a)(4)............................................................................2, 3, 4, 6, 7

D.C. CODE §11-946...................................................................................................3, 5, 10

D.C. CODE § 11-2501........................................................................................................9

D.C. CODE § 16-5501(3) .................................................................................................18

D.C. CODE §§ 16-5501-5505 ..........................................................................................10

D.C. CODE § 16-5502(c)(2)..............................................................................................14

D.C. CODE § 16-5502(d) .................................................................................................13

D.C. Code § 5502(a) .........................................................................................................1

Minn. Stat. 554.03...........................................................................................................12

Minn. Stat. § 554.03..................................................................................................10, 12

Tenn. Code Ann. §§ 4-21-1003 .......................................................................................12

**OTHER AUTHORITIES**

FED. R. CIV. P. 12(b)(6) ............................................................................................1, 4

FED. R. CIV. P. 26.........................................................................................................14

FED. R. CIV. P. 56.................................................................................................. passim

Plaintiff 3M Company ("3M") submits this consolidated Reply Memorandum in Support of Its Motions to Strike:  (1) the Special Motion to Dismiss filed by Defendants Lanny Davis, Lanny J. Davis & Associates, PLLC, and Davis-Block LLC (collectively, the "Davis Defendants"); and (2) the Special Motion to Dismiss filed by Defendants Porton Capital Technology Funds and Porton Capital, Inc. (together, the "Porton Defendants"), pursuant to D.C. Code § 5502(a),[1] as follows:

## I.

## PRELIMINARY STATEMENT

The District of Columbia Anti-SLAPP Act (the "Act") is procedural, rather than substantive, in nature.  Indeed, the motion and dismissal process provided by the Act is similar to that afforded by Federal Rules of Civil Procedure 12(b)(6) (regarding motions to dismiss for failure to state a claim on which relief can be granted) and 56 (regarding motions for summary judgment).  The Act is a procedural device for testing the sufficiency of plaintiff's pleadings and/or proof prior to trial for purposes of dismissing actions and claims that do not meet the requisite standards for further consideration in the adjudicatory process.  It does not create any new substantive rights, obligations, claims, or defenses.

However, the Act was enacted by the D.C. Council, rather than being adopted by the D.C. Court of Appeals or Superior Court.  As such, the Act violates the District of Columbia Home Rule Act (the "HRA"), which prohibits the Council from imposing rules of procedure upon the D.C. courts.  Because the Act is unenforceable, 3M's Motions to Strike Defendants'

---

[1] This Reply Memorandum also responds to the arguments set forth in the Brief of Intervenor, the District of Columbia, filed by the Office of the Attorney General for the District of Columbia ("OAG").  The Davis Defendants, the Porton Defendants, and OAG are hereinafter collectively referred to as the "Respondents."

Special Motions to Dismiss under the Act should be granted and, therefore, Defendants' Special Motions should be stricken.

## II.

### SUMMARY OF REPLY

It its Motions to Strike, 3M demonstrated that: (1) by operation of the HRA;[2] Congress expressly withheld from the D.C. Council the authority to pass the Act, because the Act constitutes a law "with respect to" Title 11 of the D.C. Code;[3] and (2) even if it were to apply the Act, this Court could not grant Defendants' special motions without affording 3M the same right of discovery to which 3M would be entitled under Federal Rule of Civil Procedure 56.

In opposing 3M's Motions to Strike, Respondents argue that: (1) the D.C. Council had the authority to enact the Act because the HRA only forbids the D.C. Council from making laws that affect the "organization and jurisdiction" of the D.C. courts, whereas the Act is "substantive" in nature; (2) the Act, including its provisions staying discovery, is enforceable in federal court; and (3) the Act applies to all of 3M's claims, including those for tortious interference with prospective business advantage and conspiracy.

Respondents' arguments are without merit for at least three reasons. <u>First</u>, the D.C. Council lacked authority to pass the Act because: (a) the Act is "with respect to" Title 11 of the D.C. Code; (b) 3M's construction of the HRA is the only interpretation that gives meaning to the operative portions of its text; (c) Respondents' cited authorities do not support their interpretation of the HRA; and (d) the Act does not create a substantive immunity.

<u>Second</u>, the HRA must be construed to provide 3M with discovery equal to that provided by Federal Rule of Civil Procedure 56. Notably, OAG, in its brief, concedes that even if this

---

[2] *See* Pub L. 93-198, D.C. CODE § 1-201.01, *passim*.

[3] D.C. CODE § 1-206.02(a)(4).

Court were to apply the Act in this lawsuit, 3M would be entitled to obtain as much discovery as it would be allowed under Fed. R. Civ. P. 56.[4]  Although the Davis Defendants self-servingly dispute 3M's entitlement to discovery, their position is contradicted by the reasoning of every federal court to consider the issue.

Third, the Act is inapplicable to claims that do not involve matters of public interest. Accordingly, this Court should grant 3M's Motions to Strike.

## III.

## ARGUMENT AND AUTHORITIES

### A.   The D.C. Council Lacked Authority To Pass The Act.

Congress has expressly prohibited the Council from "enact[ing] any act, resolution, or rule with respect to any provision of Title 11 of the District of Columbia Code," which governs both the federal and local courts in the District of Columbia.[5]  Title 11, a Congressional enactment, obligates the D.C. Superior Court (the "Superior Court") to "conduct its business according to the Federal Rules of Civil Procedure"[6] and vests the Superior Court, not the Council, with the authority to propose and adopt civil procedure rules that supplement or modify—but never conflict with—the Federal Rules of Civil Procedure.[7]  The Act establishes a

---

[4] *See* Brief of Intervenor The District of Columbia ("OAG Brief") at 31 n.20 (filed on Nov. 29, 2011) ("[T]he First Circuit's analysis in *Godin* [*v. Schenks*, 629 F.3d 79 (1st Cir. 2010)] illustrates that any concern this Court may have about the operation of the discovery provisions is best reflected by the Court's applying the Act's discovery provisions such that they do not conflict in the Court's view with any required discovery ruled [sic] under the Federal Rules . . .").

[5] D.C. CODE § 1-206.02(4).

[6] D.C. CODE §11-946.  3M's Motion to Strike, at 22; Davis Defendants' Response to 3M's Motion to Strike, at 15-23; OAG Brief, at 2-4.

[7] *See id*. § 11-946 ("Rules which modify the Federal Rules shall be submitted for the approval of the [D.C. Court of Appeals] and they shall not take effect until approval by that court.  The Superior Court may adopt and enforce other rules as it may deem necessary . . . if

"special motion" procedure by which defendants who make a *prima facie* showing may seek a stay of discovery and early dismissal of claims prior to motions asserted under Federal Rules of Procedure 12 and 56.

Given those undisputed facts, the Act must be construed as an act of the Council "with respect to" a "provision of Title 11" – and, therefore, deemed invalid. Respondents, however, argue that the HRA does not prohibit the Council from enacting laws "with respect to" Title 11 so long as such laws do not concern what Respondents deem to be the "organization and jurisdiction of the District of Columbia courts."[8] That argument is without merit.

1.  **The Act is "with respect to" Title 11 of the D.C. Code and, therefore, is invalid pursuant to the HRA.**

The applicable portion of the HRA that renders the Act invalid is found at Section 1-206.02 of the D.C. Code:

> (a) The Council shall have no authority to pass any act contrary to the provisions of this Act except as specifically provided in this Act, or to—
>
> \* \* \*
>
> (4) enact any act, resolution, or rule with respect to any provision of Title 11 of the District of Columbia Code (relating to organization and jurisdiction of the District of Columbia courts)[.][9]

The phrase "with respect to," when used by Congress to preempt state action, reflects an intent to assert a broad sweep of exclusive power over any subject having "a relation to or

---

such rules do not modify the Federal Rules."); *see also* 3M's Motion to Strike, at 22; Davis Defendants' Response to 3M's Motion to Strike, at 17; OAG Brief, at 2-4.

[8] Davis Defendants' Response to 3M's Motion to Strike, at 15-17; OAG Brief, at 2-4.

[9] D.C. CODE § 1-206.02(a)(4).

concern with" the Congressional act.[10]   The HRA's express prohibition against the D.C. Council making any law "with respect to" Title 11 should be interpreted in an equally broad manner.

Considered in that light, the Act violates the HRA because it has "a relation to or concern with" the subject matter of Title 11,[11] particularly Title 11's requirement that the D.C. courts apply the Federal Rules of Civil Procedures as may be appropriately modified by the Superior Court.[12]   The Act creates a new procedure for evaluating and disposing of certain claims.

---

[10] *See, e.g., Vango Media, Inc. v. City of New York*, 829 F.Supp. 572, 580 (S.D.N.Y. 1993) (city ordinance requiring licensed taxis displaying advertisements to display one anti-smoking advertisement for every four cigarette advertisements was preempted by a federal law restricting state laws "with respect to the advertising or promotion of cigarettes," and noting that the federal act was broader than the previous law, which merely restricted state laws "in the advertising" of cigarettes); *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520 (1992) (reaching similar conclusion).  In accordance with this principle, the Supreme Court has held, for example, that a preemption clause invalidating any state law "with respect to" medical devices preempts state tort claims arising from the use of such devices, even if the state tort's duty of care does not single out medical devices.  *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 327-29 (2008).  Likewise, federal district courts have found that a federal statute restricting state regulation "with respect to" the termination or non-renewal of gas station franchises is sufficiently broad to foreclose a state law promissory estoppel claim by a terminated franchisee. *Camina Services, Inc. v. Shell Oil Co.*, 816 F.Supp.1533, 1538-39 (S.D. Fla. 1992); *Meyer v. Amerada Hess Corp.*, 541 F.Supp. 321, 332 (D. N.J. 1982) (court held preemption provision "with respect to" gas station franchises occupies the field and preempts state law claims arising from the nonrenewal of a gas station franchise).  In yet another context, the preemption clause in the federal Endangered Species Act—which restricts state laws and regulations "with respect to" the "importation or exportation of, or interstate or foreign commerce in, endangered species"— has been held to preempt state law claims challenging the humaneness of the transportation of an endangered elephant because the preemption clause fully occupied the field. *In Defense of Animals v. Cleveland Metroparks Zoo*, 785 F.Supp. 100, 102-03 (N.D. Ohio 1991).  Similarly, a federal law restricting state regulations "with respect to" "any motor vehicle or item of motor vehicle equipment" preempted a state law strict liability tort claim based on a design defect. *Verna v. U.S. Suzuki Motor Corp.*, 713 F.Supp. 823, 825-27 (E.D. Pa. 1989) (federal law restricting state regulations "with respect to" "any motor vehicle or item of motor vehicle equipment" preempted a state law strict liability design defect claim where plaintiff alleged that defendant failed to include a modulating headlamp that was prohibited under federal regulations).

[11] *See Vango Media, Inc. v. City of New York*, 829 F.Supp. 572, 580 (S.D.N.Y. 1993).

[12] D.C. CODE § 11-946 ("Rules which modify the Federal Rules shall be submitted for the approval of the [D.C. Court of Appeals] and they shall not take effect until approval by that

Indeed, the Council has itself acknowledged that the Act "*adds new provisions* . . . to provide an *expeditious process* for dealing with strategic lawsuits against public participation."[13]  Those new provisions impose procedures absent from the Federal Rules of Civil Procedure, including the procedures invoked by Defendants in this case for filing a special motion to dismiss and seeking a stay of discovery.

> **2.      3M's interpretation of the HRA should be accepted because it is the only one that gives meaning to the entire statute.**

Respondents argue that the HRA only forbids the Council from enacting provisions that have to do with the "organization and jurisdiction of the District of Columbia courts."[14] According to Respondents, the parenthetical phrase, "relating to organization and jurisdiction of the District of Columbia courts" was intended by Congress to narrow and modify the preceding, and unequivocal, statement proscribing the Council from passing "any act with respect to any provision" of Title 11.[15]  Respondents' argument requires the Court to ignore the parentheses that Congress included in Section 1-206.02(a)(4) of the HRA.

A court considering the meaning of an enactment must construe the law as written.[16] Parentheticals in statutes should be read as descriptive, rather than limiting, clauses – because "a

---

court.  The Superior Court may adopt and enforce other rules as it may deem necessary . . . if such rules do not modify the Federal Rules.").

[13] *See* Council of the District of Columbia, Committee on Public Safety and the Judiciary, Committee Report, dated November 18, 2010 (emphasis added).

[14] Davis Defendants' Response to 3M's Motion to Strike, at 15.

[15] *Id.* at 15-17.

[16] *Baxter Healthcare Corp. v. Weeks*, 643 F.Supp.2d 111, 118 (D.D.C. 2009) ("Unless and until Congress modifies the language of the grandfather clause, or eliminates it entirely, I am bound to apply the law as written"); *O.K. v. Bush*, 377 F.Supp.2d 102, 117 (D.D.C. 2009) ("It [is] the role of the court to faithfully apply the laws as written.").  Indeed, even the *Bergman* case on which OAG so prominently relies acknowledges that "textual or other persuasive support" for that plaintiff's interpretation of the Home Rule Act's exception would have led it to a different conclusion.  *Bergman v. District of Columbia*, 986 A.2d 1208, 1230 (D.C. 2010).

parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute."[17]   Parenthetical expressions are for purposes of providing explanation, description, or commentary; they are <u>not</u> essential to the meaning of the remaining portions of the sentence.[18]   Accordingly, the parentheses that set off the "organization and jurisdiction" phrase are properly read as intended solely to assist the reader in quickly understanding what Title 11 generally concerns, and not to substantively broaden Congress' grant of authority to the D.C. Council.[19]

### 3.   None of Respondents' cited authorities support their interpretation of the HRA.

Respondents attempt to shore up their erroneous reading of the HRA with references to inapposite court decisions.   OAG's reliance on *Dimond v. District of Columbia* case is

---

[17] *United States v. Monjaras-Castaneda*, 190 F.3d 326, 330 (5th Cir. 1999); *see also United States v. Harrell*, 637 F.3d 1008, 1010 (9th Cir. 2011) ("Congress' use of 'relating to' parentheticals is widely understood to have a descriptive import.") (citing *United States v. Persichilli*, 608 F.3d 34, 40-41 (1st Cir. 2010), *United States v. Galindo-Gallegos*, 244 F.3d 78, 733-34 (9th Cir. 2001); *United States v. Kassouf*, 144 F.3d 952, 959-60 (6th Cir. 1998); *United States v. Garner*, 837 F.2d 1404, 1419 (7th Cir. 1987); *United States v. Herring*, 602 F.2d 1220, 1223 (5th Cir. 1979)).

[18] *See* H. Ramsey Fowler & Jane E. Aaron, *The Little, Brown Book* 421-22 (2006) ("Parenthetical expressions include explanations, facts, digressions, and examples that my be helpful but are not essential to meaning."); Brian A. Garner, *Garner's Modern American Usage* 679-80 (2009) (parentheses "indicate interpolations and remarks by the writer of the text" or "specify, in one's own running text, an authority, definition, explanation, reference or translation"); Andrea Sutcliff, *New York Public Library Writer's Guide to Style and Usage* 248 (1994) ("Parenthetical words, phrases, or clauses are those that interrupt the flow of a sentence and could be omitted without changing the meaning (parentheticals are often called interrupters or interjections)."); *see also Oxford Advanced Learner's Dictionary* (defining a parenthetical as providing "extra information in a speech or piece of writing.").

[19] Indeed, Congress used an equivalent formulation in subsection 9 of the same HRA provision, in which the parentheses are obviously intended to signal to the reader the nature of the referenced code provisions, not to qualify the non-parenthetical text.   *See* D.C. CODE § 1-206.02(a)(9) ("The Council shall have no authority to . . . enact any act . . . with respect to any provision of title 23 of the District of Columbia Code (relating to criminal procedure), or with respect to any provision of any law codified in title 22 or 24 of the District of Columbia Code (relating to crimes and treatment of prisoners).").

particularly misleading.[20]   Hoping to cite a case in which a court affirmed some act of the Council that was arguably procedural in nature, OAG incorrectly asserts that the *Dimond* court held it not to be a violation of the HRA for the Council to impose a $5,000 "minimum limit for suing for damages for an automobile accident *in Superior Court*."[21]   The law at issue in *Dimond*, however, had nothing to do with procedural requirements for suit in Superior Court; rather, it altogether eliminated a substantive cause of action for car accident damages below $5,000.[22]

Respondents' reliance on the *District of Columbia v. Sullivan*,[23] *Hessey v. Burden*,[24] and *Umana v. Swidler & Berlin, Chartered*[25] decisions is equally misplaced.   In each of those cases, the court correctly concluded that the law being challenged under the HRA was substantive in nature because those laws, respectively, eliminated criminal offenses (*Sullivan*),[26] enlarged the class of persons with standing to bring tax appeals (*Hessey*),[27] and adopted the Uniform Arbitration Act (*Umana*).[28]   None of those laws purported to tell the Superior Court what procedural rules to use or how to conduct its business. Rather, they were exercises of the Council's delegated authority to enact or change substantive law.[29]

---

[20] OAG's Brief, at 8-9 ("In *Dimond*, the D.C. Circuit confronted a challenge to legislation that raised the minimum limit for suing for damages for an automobile accident in Superior Court to $5,000.") (citing *Dimond v. District of Columbia*, 792 F.2d 179, 182 (D.C. Cir. 1986)).

[21] *Id.* (emphasis added).

[22] *See Dimond*, 792 F.2d at 182.

[23] *District of Columbia v. Sullivan*, 436 A.2d 364 (D.C. 1981).

[24] *Hessey v. Burden*, 584 A.2d 1 (D.C. 1990).

[25] *Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717 (D.C. 1995).

[26] *Sullivan*, 436 A.2d 364.

[27] *Hessey*, 584 A.2d 1.

[28] *Umana*, 664 A.2d 717.

[29] *See Umana*, 669 A.2d at 723-24 ("The limitation does not, of course, in any way limit the Council's authority to enact or to alter the substantive law to be applied by the courts"); *Firemen's Ins. Co. of Washington, D.C. v. Washington*, 483 F.2d 1323, 1327 (D.C. Cir. 1973) ("[T]he

OAG, in its search for even one example of a non-substantive law that could be said to have infringed on Title 11 but which nonetheless survived an HRA challenge, ultimately has to rely on a mischaracterization of the *Bergman* case.  According to OAG, the *Bergman* court "sustained a statute governing personal solicitation of business [by lawyers] against an HRA challenge, even though regulation of lawyers' conduct is entrusted to the D.C. courts in Title 11."[30]  That is not what *Bergman* held.  To the contrary, the *Bergman* court sustained an anti-ambulance chasing law precisely because the Council and D.C. courts *shared* authority to regulate the conduct of attorneys,[31] and held that Title 11 vested the Superior Court only with a non-exclusive responsibility "to make such rules as it deems proper respecting the examination, qualification and admission of [attorneys] . . . and their censure, suspension, and exclusion."[32]  Accordingly, the *Bergman* court found that Title 11 did not foreclose the Council's concurrent jurisdiction to enact a substantive law aimed at undesirable attorney practices[33]—a law that, in any event, had nothing to do with attorney "examination, qualification and admission" or "censure, suspension, and exclusion."[34]

Here, in contrast to the authorities cited by Respondents, the Act infringes on the D.C. courts' exclusive authority to modify the rules of procedure applicable in those courts.  Congress,

---

District government may 'make and enforce all such reasonable and usual police regulations . . . as [it] deem[s] necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia.'").

[30] OAG's Brief, at 12 (emphasis added).

[31] *Bergman*, at 1229-30 (affirming trial judge's conclusion that the Superior Court's "inherent and statutory authority to regulate the practice of law in the District of Columbia is not 'exclusive'").

[32] *Id.* at 1225-26 (rejecting argument that the HRA and Title 11 combined to "confer upon this court the *exclusive* authority to take any action which would restrict in any way the conduct of attorneys in the practice of law") (emphasis in original) (quoting D.C. CODE § 11-2501).

[33] *See id.* at 1230.

[34] D.C. CODE § 11-2501.

through Title 11, requires the D.C. courts to apply the Federal Rules of Civil Procedure.[35]  Any

proposed rule that conflicts with the Federal Rules *must* be approved by the D.C. Court of

Appeals (not the Council);[36] and it is for the Superior Court (not the Council) to "adopt and

enforce other rules as it may deem necessary . . . if such rules do not modify the Federal

Rules."[37]   Title 11, therefore, leaves to the Council no realm of *Bergman*-like concurrent

jurisdiction with which to impose procedural rules of its choosing on the D.C. courts.

### 4.    The Act does not create a substantive immunity.

In their quest to cast the Act as creating "substantive" law that would not be considered

"with respect to" Title 11, the Davis Defendants argue that the Act does not impose procedures

on the D.C. courts but, instead, creates a substantive "immunity defense" intended to protect

those exercising their rights of free speech and petition.[38]  Of course, nothing in the Act[39] or its

legislative history[40] refers to, or otherwise establishes, any such "immunity."

Defendants cite an assortment of cases discussing selected anti-SLAPP statutes from

other states.[41]  Not one of those decisions supports Respondents' proposition that the D.C. Act

---

[35] D.C. CODE § 11-946.

[36] *Id.*

[37] *Id.*

[38] Davis Defendants' Response to 3M's Motion to Strike, at 28-29.

[39] D.C. CODE §§ 16-5501-5505 (2010).

[40] The Anti-SLAPP Act of 2010, D.C. Reg. 741 (D.C. Act 18-701).

[41] *See Eklund v. City of Seattle Mun. Court*, 410 Fed. Appx. 14 (9th Cir. 2010) (unpublished opinion) (reversing the lower court's grant of immunity and attorneys' fees under Washington's anti-SLAPP statute); *Segaline v. Dep't of Labor & Indus.,* 238 P.3d 1107, 1110 (same); *Phillips v. Oklahoma Pub. Co.*, 2011 U.S. Dist. LEXIS 119077 (W.D. Wash. 2011) (holding that defendant's anti-SLAPP motion was moot because the claims were dismissed as time-barred); *Pennsylvania Vill. Assocs. v. McIntyre*, 11 A.3d 906 (Pa. 2011) (reversing the lower court's grant of immunity under the Pennsylvania Environmental Immunity Act); *Middle-Snake-Tamarac Rivers Watershed Dist. v. Stengrim*, 784 N.W.2d 834, 839 (Minn. 2010) (discussing the invocation of immunity under Minn. Stat. § 554.03 entitled "Immunity"); *Wright*

creates an immunity, because the state anti-SLAPP variant in each of those cases specifically and expressly created an immunity.  For example, the state of Washington's anti-SLAPP statute, on which Respondents rely, is entitled "Communication to government agency or self-governing organization—*Immunity from civil liability*."[42]   Similarly, Pennsylvania's "Environmental Immunity Act,"[43] to which Respondents also cite, explicitly creates a narrow type of immunity for public statements regarding the environment.[44]

---

[42] *Dev. Group, LLC v. Walsh*, 939 N.E.2d 389, 397 (Ill. 2010) (discussing Illinois anti-SLAPP statute's specific grant of a "statutory immunity"); *Trudeau v. Consumeraffairs.com, Inc.*, 2011 U.S. Dist. LEXIS 99852 (N.D. Ill. 2011) (denying defendant's anti-SLAPP motion); *Karousos v. Padee*, 902 A.2d 263 (R.I. Sup. Ct. 2010) (discussing the "conditional immunity" provided for by Rhode Island's anti-SLAPP statute); *Mills v. Brown*, 372 F.Supp.2d 683 (Dist. Ct. R.I. 2005) (discussing in *dicta* the existence of Rhode Island's anti-SLAPP statute); *Hicks v. Cadle Co.*, 355 Fed. Appx. 186 (10th Cir. 2009) (upholding arbiter's finding that Tennessee's anti-SLAPP statute did not apply to false statements communicated in reckless disregard to their falsity).

[42] Rᴇᴠ. Cᴏᴅᴇ Wᴀsʜ. § 4.25.510 ("A person who communicates a complaint or information to any branch or agency of federal, state, or local government, or to any self-regulatory organization that regulates persons involved in the securities or futures business and that has been delegated authority by a federal, state, or local government agency and is subject to oversight by the delegating agency, *is immune from civil liability* for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization.") (emphasis added).

[43] 27 Pa.C.S. § 8302 ("Except as provided in subsection (b), a person that, pursuant to Federal or State law, files an action in the courts of this Commonwealth to enforce an environmental law or regulation or that makes an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation *shall be immune from civil liability* in any resulting legal proceeding for damages where the action or communication is aimed at procuring favorable governmental action. (emphasis added)).

[44] *See Pennsylvania Vill. Assocs. v. McIntyre*, 11 A.3d 906 (Pa. 2011) (reversing the lower court's grant of immunity under the Pennsylvania Environmental Immunity Act).

Defendants' reliance on the other cases[45]—concerning the anti-SLAPP laws in Minnesota,[46] Illinois,[47] Rhode Island[48] and Tennessee,[49] respectively—each involved an anti-SLAPP law that denominated the protection provided thereunder as an "immunity" from civil liability.  Respondents fail to cite to a single case, however, that holds that a state anti-SLAPP law that does *not* expressly create an "immunity" by its terms, nevertheless impliedly creates an immunity from suit.  Respondents' reliance on *Batzel v. Smith*,[50] a case analyzing California's anti-SLAPP statute, for the contrary proposition is unavailing because, as was recently clarified

---

[45] *See, e.g.*, *Middle-Snake-Tamarac Rivers Watershed Dist. V. Stengrim*, 784 N.W.2d 834, 839 (Minn. 2010) (discussing the invocation of immunity under Minn. Stat. § 554.03 entitled "Immunity"); *Wright Dev. Group, LLC v. Walsh*, 939 N.E.2d 389, 397 (Ill. 2010) (discussing the Illinois anti-SLAPP statute's specific grant of a "statutory immunity"); *Trudeau v. Consumeraffairs.com, Inc.*, 2011 U.S. Dist. LEXIS 99852 (N.D. Ill. 2011) (denying defendant's anti-SLAPP motion); *Karousos v. Padee*, 902 A.2d 263 (R.I. Sup. Ct. 2010) (discussing the "conditional immunity" provided for by Rhode Island's anti-SLAPP statute); *Mills v. Brown*, 372 F.Supp.2d 683 (Dist. Ct. R.I. 2005) (discussing in *dicta* the existence of Rhode Island's anti-SLAPP statute); *Hicks v. Cadle Co.*, 355 Fed. Appx. 186 (10th Cir. 2009) (upholding arbiter's finding that Tennessee's anti-SLAPP statute did not apply to false statements communicated in reckless disregard to their falsity).

[46] Minn. Stat. 554.03 ("Lawful conduct or speech that is genuinely aimed in whole or in part at procuring favorable government action *is immune from liability*, unless the conduct or speech constitutes a tort or a violation of a person's constitutional right") (emphasis added).

[47] 735 Ill. Comp. Stat. 110/5 ("Acts in furtherance of the constitutional rights to petition, speech, associations, and participation in government are *immune from liability*, regardless of intent or purpose, except when genuinely aimed at procuring favorable governmental action, result or outcome.") (emphasis added).

[48] R.I. Gen. Laws § 9-33-2 ("A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern *shall be conditionally immune from civil claims, counterclaims, or cross-claims*. . . .) (emphasis added).

[49] Tenn. Code Ann. §§ 4-21-1003 ("Any person who in furtherance of such persons' right of free speech or petition under the Tennessee or United States Constitution in connection with a public or governmental issue communicates information regarding another person or entity to any agency of the federal, state or local government regarding a matter of concern to that agency *shall be immune from civil liability* on claims based upon the communication to the agency.") (emphasis added).

[50] 333 F.3d 1018 (9th Cir. 2003).

by the Ninth Circuit in *Liberal v. Estrada*,[51] California courts treat the California anti-SLAPP statute as creating a "substantive immunity" only because it provides for an immediate right to appeal from any denial of the special motion procedure created by that act.[52] By contrast, the D.C. Act does not provide for an immediate appeal from a denial of a special motion. In sum, the D.C. Act functions only as a procedural device to obtain a dismissal of claims prior to trial – not a substantive immunity.[53]

In an even more obtuse attempt to find an "immunity" where none exists, Respondents compare the D.C. Act to the qualified immunity granted to government officials in cases asserted under 42 U.S.C. § 1983.[54] That comparison is specious because, unlike a defendant in a purported "SLAPP" action—who is required by the Act to make a *prima facie* showing of

---

[51] 632 F.3d 1064 (9th Cir. 2011).

[52] *Liberal*, 632 F.3d at 1087-88 ("The California Legislature's intent that § 820.2 function only as a defense to liability and not an immunity from suit is further evidenced by the fact that it did not provide for immediate interlocutory appellate review of denials of discretionary acts immunity at the demurrer or summary judgment stages. *In other situations, where the Legislature has provided immunity from suit, it has authorized interlocutory appeals from denials of dispositive motions to strike.* Under California's Strategic Lawsuits Against Public Participation, Cal. Civ. Proc. Code § 425.16, . . . '[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1' . . . For this reason, we have acknowledged that 'California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit . . . .'") (citing *Batzel*, 333 F.3d at 1025) (emphasis added).

[53] *See* D.C. CODE § 16-5502(d) (providing that if a special motion is granted, then dismissal of suit shall be with prejudice). Defendants also cite to *Benoit v. Frederickson*, 454 Mass. 148 (Mass. 2009), which analyzed whether defendants could immediately appeal a denial of an anti-SLAPP motion brought pursuant to the Massachusetts statute in light of ongoing counterclaims. The *Benoit* court held that the doctrine of present execution applies to the denial of an anti-SLAPP motion because "as in the context of a claim of governmental immunity where 'the right to immunity from suit would be 'lost forever' if an order denying it were not appealable until the close of litigation,' the denial of a special motion to dismiss interferes with rights in a way that cannot be remedied on appeal from the final judgment." (citations omitted). Defendants' reliance on *Benoit* is without merit *first* because it does not hold that the Massachusetts anti-SLAPP statute provides a "substantive immunity defense," and *second* because the D.C. Act provides for an immediate appeal only if a claim is dismissed pursuant to the grant of a special motion.

[54] Davis Defendants' Response to 3M's Motion to Strike, at 28-29.

entitlement to the Act's protections and may, in any event, be required to participate in discovery[55]—a government official defending a § 1983 action is automatically immune from suit as a matter of law.[56]

**B.**     **The Act Must Be Construed To Provide Discovery Equal To That Provided By Federal Rule Of Civil Procedure 56.**

In light of Respondents' briefs, it is now beyond dispute that, even if this Court were to apply the Act in this action, 3M must be provided with at least as much access to, and opportunity for, discovery as would be available under Federal Rule of Civil Procedure 56. That is the repeated and consistent holding of every federal court to consider the issue, each of which either rejected the application of any state anti-SLAPP law that interferes with discovery under the Federal Rules,[57] or held that anti-SLAPP laws must be construed to grant discovery

---

[55] D.C. CODE § 16-5502(c)(2).

[56] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added); *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

[57] *Davis v. Elec. Arts Inc.*, 2011 U.S. Dist. LEXIS 71642, at *12 (N.D. Cal. July 5, 2011) (cited by Respondents) (discovery stay in California's anti-SLAPP statute collides with Rule 56(d) and should not be applied); *Rodgers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 981 (C.D. Cal. 1999) ("Because the discovery-limiting aspects of [the California anti-SLAPP law] collide with the discovery-allowing aspects of Rule 56, these aspects of [the anti-SLAPP law] cannot apply in federal court."); *Nixon v. Haag*, 2009 WL 2026343, *3 (S.D. Ind. July 7, 2009) (refusing to apply Indiana anti-SLAPP law that conflicted with Rule 26 on ground that "the federal procedural rule supersedes the conflicting state-law procedural rule restricting the scope of discovery; no 'statutory' stay of discovery applies to this case"); *South Middlesex Opportunity Council, Inc. v. Town of Framingham*, 2008 U.S. Dist. LEXIS 85764, 2008 WL 4595369, at *11 (D. Mass. 2008); *Stuborn Ltd. Partnership v. Bernstein*, 245 F.Supp.2d 312, 316 (D. Mass. 2003) ("The plain language of the statute reflects procedural mandates that rearrange the course of litigation as prescribed by the Federal Rules. For example, under the Federal Rules [12 and 56] the plaintiff is the master of her complaint; thus, on motions to dismiss as well as motions for summary judgment, inferences are to be made and facts construed in her favor. . . . In light of the competing procedures, I am persuaded that the anti-SLAPP statute's special motion provision is predominantly procedural in nature, and that it directly conflicts with the Federal Rules of Procedure.").

equivalent to that provided by the Federal Rules.[58]  These decisions comport with the Supreme

Court's mandate that, as a matter of due process, Fed. R. Civ. P. 56 must be read as "*requiring*,

rather than merely permitting, discovery where the moving party has not had the opportunity to

discover information that is essential to its opposition."[59]

---

[58] *See Metabolife Int'l v. Warnick*, 264 F.3d 832, 846 (9th Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (emphasis in original) (finding that a plaintiff in federal court responding to a motion to strike under California's anti-SLAPP act must be permitted discovery to the extent it would be entitled to discovery in responding to a summary judgment motion under Rule 56(f)); *see also Godin v. Schenks*, 629 F.3d 79, 90-91 (1st Cir. 2010) (finding no conflict between the Maine anti-SLAPP statute and the Federal Rules because the state law required a court applying it to grant discovery equivalent to that which would have been allowed under Rule 56); *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 168-69 (5th Cir. 2009) (affirming application of Louisiana anti-SLAPP law by the district court because the law "permits the Court to order specified discovery where necessary to the plaintiff's opposition (similar to the relief afforded by [former] Rule 56(f))"); *In re Bah*, 321 B.R. 41, 45 n.6 (9th Cir. 2005) ("[I]f a defendant makes a motion to strike under the anti-SLAPP statute based on a failure of proof or evidence, the motion must be treated as though it is a motion for summary judgment and discovery must be developed sufficiently to permit summary judgment under Rule 56."); *Aeroplate Corp. v. Arch Ins. Co.*, CV- F 06-1099 AWI SMS, 2006 U.S. Dist. LEXIS 82180, at *24-25 (E.D. Cal. Nov. 8, 2006) (denying special motion to dismiss under California's anti-SLAPP statute before non-movant had any opportunity for discovery, even though opposing party had not shown with particularity what evidence discovery would make available, because "the Supreme Court's holding in *Liberty Lobby* makes clear that, where there has been no discovery – as is the case here – the court is required to grant the request of the nonmoving party to stay or continue the [dispositive] motion to allow for discovery."); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.Supp.2d 1172, 1180 (C.D. Cal. 2006) ("If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims . . .  discovery must be developed sufficiently to permit summary judgment under Rule 56.").

[59] *Metabolife* 264 F.3d at 846 (affirming that federal courts "should not scrutinize Plaintiff's evidence of facts uniquely within the Defendants' control before ordering discovery to enable Plaintiff to meet its burden of opposing Defendants' anti-SLAPP motions"), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (emphasis in original); *see also Kahn v. Parsons Global Servs., Ltd.*, 428 F.3d 1079, 1087 (D.C. Cir. 2005) ("The court has long recognized that a party . . . needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion.") (quoting *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987)); *Elliott v. Fed. Bureau of Prisons*, 2006 U.S. Dist. LEXIS 93258, *14 (D.D.C. Dec. 27, 2006) ("[T]he Court is cognizant that a party opposing summary judgment needs a reasonable opportunity to complete discovery before responding to a summary judgment motion and that insufficient time or opportunity to engage in discovery is cause to defer decision

In recognition of this overwhelming authority, OAG acknowledges that "any concern this Court may have about the operation of the discovery provisions is best reflected by the Court's applying the Act's discovery provisions such that they do not conflict in the Court's view with any required discovery ruled [sic] under the Federal Rules."[60]  Indeed, Respondents' own cited authorities confirm that, in the context of opposing an anti-SLAPP motion, plaintiff is entitled to receive discovery.[61]  This Court should accept OAG's suggestion, and the other authority cited by Respondents, and construe the Act as entitling 3M to the same discovery as would otherwise be provided by Rule 56.  Accordingly, and as discussed in 3M's Response to Defendants' Special Motions to Dismiss, filed concurrently with this Reply Memorandum, 3M seeks certain reasonable discovery for the purpose of responding to Defendants' special motions.

## C.   The Anti-SLAPP Act Is Inapplicable To Claims That Do Not Involve Matters of Public Interest.

The Davis Defendants make the additional argument that, because various states apply anti-SLAPP statutes to claims for tortious interference with contract or prospective business advantage, the D.C. Act should apply here.[62]  For the same reasons stated at greater length in Section IV.B. of 3M's Consolidated Response to the Special Motions to Dismiss Filed by the

---

on the motion."); *Dyson v. Winfield*, 113 F.Supp.2d 35, 42 (D.D.C. 2000) (extending discovery "is inappropriate when a party has had ample time for discovery or when it has failed to immediately bring the discovery problem to the court").

[60] OAG's Brief, at 31 (discussing *Godin*, 629 F.3d at 90-91).

[61] *See, e.g., Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors*, 2010 U.S. Dist. LEXIS 105497, at * 3 (S.D. Cal. Oct. 4, 2010) (cited by Respondents) (holding that "this and other district courts have interpreted Ninth Circuit precedent as requiring the application of [Rule 56(f)] when determining whether discovery is allowed [and that] . . . Rule 56(f) requires discovery where the non-moving party has not had the opportunity to discover information essential to its opposition"); *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1020, 1101 (C.D. Cal. 2004) (cited by Respondents) (holding that court had discretion to order discovery in the context of any dispositive motion, such as one made pursuant to California's anti-SLAPP statute).

[62] Davis Defendants' Response to 3M's Motion to Strike, at 30-32.

Davis Defendants and the Porton Defendants (which is summarized below), the Court should reject this argument.[63]

First, unlike here, the statements at issue in the cases on which the Davis Defendants rely were found to be matters of public interest because they involved either direct petitioning activities[64] or public discourse.[65] Second, case law establishes that an anti-SLAPP statute does not apply to a tortious interference claim when, as in this case, the claim does not raise an issue of public interest.[66] Third, 3M's tortious interference claims involve the efforts of the Davis Defendants to influence officials and employees of the British Government not to do business with 3M. Accordingly, because the Davis Defendants' statements were made primarily to

---

[63] *3M's Consol. Response to the Special Mot. to Dismiss Filed by Lanny Davis, Lanny J. Davis & Assocs., PLLC, Davis-Block LLC, Porton Cap. Tech. Funds, and Porton Cap. Inc.*, 1:11-cv-01527-RWL (filed on Dec. 15, 2011).

[64] *See Language Line Servs. v. Language Servs. Assocs., LLC*, 2011 U.S. Dist. LEXIS 124836, at *21-23 (N.D. Cal. Oct 13, 2011) (involving a tortious interference claim arising directly from petitioning the courts to secure an injunction); *Metzler v. Rowell*, 547 S.E. 2d 311, 314-15 (Ga. App. 2001) (involving a tortious interference claim arising from an attorney's intervention in a zoning dispute under consideration by a "judicial body"); *Margolis v. Gosselin*, 1996 Mass. Super. LEXIS 335, at *5-6 (Mass. Super. Ct. May 22, 1996) (involving a tortious interference claim arising from soliciting signatures to effect action on the part of Department of Environmental Protection); *Hometown Props. v. Fleming*, 680 A.2d 56, 58 (R.I. 1996) (involving a tortious interference claim arising from communications with various state and federal governmental officials).

[65] *See New York Studio, Inc. v. Better Bus. Bureau of Alaska*, 2011 U.S. Dist. LEXIS 62567, at *10-12 (W.D. Wash. June 13, 2011) (involving a tortious interference claim arising from a media press release); *New.Net, Inc., v. Lavasoft*, 356 F.Supp.2d 1090, 1105-06 (C.D. Cal. 2004) (involving a tortious interference claim arising from discussions in an internet community group).

[66] *See, e.g., Kurwa v. Harrington, Foxx, Dubrow & Canter, LLP*, 146 Cal. App. 4th 841, 848-50 (Cal. App. 2d Dist. 2007); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 110 (Cal. App. 4th Dist. 2004); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1130 (N.D. Cal. 1999) (declining to apply California's anti-SLAPP statute to a tortious interference claim only involving statements of one company regarding the conduct of a competitor company).

advance their own "commercial interests" rather than to comment on or share information about a matter of public significance, the Act does not apply.[67]

## IV.

## CONCLUSION AND REQUEST FOR RELIEF

For all the above-stated reasons, 3M respectfully requests that the Court grant its Motions to Strike Defendants' Special Motions to Dismiss and award 3M such other relief to which it is entitled and which the Court deems just and proper.


Respectfully submitted,


By: /s/Kenneth J. Pfaehler
     Kenneth J. Pfaehler
     David I. Ackerman
     **SNR DENTON US LLP**

     1301 K Street NW
     Suite 600, East Tower
     Washington, D.C.  20005-3364
     Telephone:  (202) 408-6468
     Facsimile:  (202) 408-6399

     William A. Brewer III
     Michael J. Collins
     Kenneth N. Hickox, Jr.
     Robert Gifford
     **BICKEL & BREWER**
     767 Fifth Avenue, 50th Floor
     New York, New York  10153
     Telephone:  (212) 489-1400
     Facsimile:  (212) 489-2384

     **ATTORNEYS FOR PLAINTIFF**

---

[67] D.C. CODE § 16-5501(3) (the Act does not apply to "statements directed primarily toward protecting the speaker's commercial interests rather than toward commenting on or sharing information about a matter of public significance").