**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

3M COMPANY,                :      Civil Action No.
                              :      1:11-CV-01527-RLW
                              :

          Plaintiff,        :

                              :

      - v -                :

                              :

HARVEY BOULTER,          :
PORTON CAPITAL TECHNOLOGY FUNDS,    :
PORTON CAPITAL, INC., LANNY DAVIS,     :
LANNY J. DAVIS & ASSOCIATES, PLLC and   :
DAVIS-BLOCK LLC,            :

                              :

         Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

### DECLARATION OF KENNETH N. HICKOX, JR. IN SUPPORT OF 3M COMPANY'S CONSOLIDATED RESPONSE TO THE SPECIAL MOTIONS TO DISMISS FILED BY DEFENDANTS LANNY DAVIS, LANNY J. DAVIS & ASSOCIATES, PLLC AND DAVIS-BLOCK LLC AND PORTON CAPITAL TECHNOLOGY FUNDS AND PORTON CAPITAL, INC.

1.      My name is Kenneth N. Hickox, Jr.  I am over eighteen years old and fully competent and qualified in all respects to make this Declaration.  The facts set forth herein are true and correct and, unless otherwise qualified, are within my personal knowledge.

2.      I am a Partner with Bickel & Brewer.  Bickel & Brewer is counsel for Plaintiff 3M Company ("3M") in this action.  I am familiar with the pleadings, correspondence, and other items in the case file for this action.

3.      The Special Motion To Dismiss Plaintiff's Complaint And For An Award Of Fees And Costs and Memorandum In Support (the "Special Motion") filed by Defendants Lanny Davis ("Davis"), Lanny J. Davis & Associates, PLLC, and Davis-Block, LLC (collectively "Movants") was submitted before a conference under Fed. R. Civ. P 26(f) was conducted in this matter.  Accordingly, the parties have not yet engaged in any discovery in this lawsuit.

4.     After the Special Motion was filed, 3M made a reasonable attempt to obtain relevant discovery by requesting that Movants agree to provide limited discovery aimed at responding to the motion without the need to petition the Court.  Movants, however, refused that request, noting that they did not believe that 3M was entitled to any discovery in order to respond to the Special Motion.[1]

5.     The discovery identified in this Declaration is not within 3M's possession, custody, or control, but rather in the possession, custody, or control of Defendants in this matter, and/or the following third-parties: (i) Adam Werrity; and (ii) Tetra Strategy Ltd.

6.     As to each category of discovery sought that is identified herein, 3M will be prejudiced if it is not granted, because it requires the information in order to defeat the Special Motion by establishing, or raising a genuine issue of material fact, that it is likely to succeed on the merits of its claims in this lawsuit because the defamatory statements and actions identified in the Complaint were: (i) not protected by the D.C. Anti-Slapp Act of 2010 (the "Act") because they were not made or taken in furtherance of the right of advocacy on issues of public interest;[2] (ii) not protected by the Act because they were directed primarily toward protecting the speaker's commercial interests;[3] (iii) knowingly  false when made, not substantially true, and/or made with

---

[1] See Letter from W. Brewer to R. Mullady, dated Oct. 10, 2011, attached at Ex. S to 3M Company's Motion to Strike Special Motion to Dismiss and Cross-Motion for Discovery and Continuance ("3M's Cross-Motion"); Letter from R. Mullady to W. Brewer, dated Oct. 11, 2011, attached at Ex. A to 3M's Cross-Motion.

[2] Davis asserts that "there can be no serious dispute that the statements about which 3M complains qualify as 'act[s] in furtherance of the right of advocacy on issues of public interest.'" See Special Motion at 21-23.  They fail to cite to the Act's further definition excluding from its purview statements and conduct "directed primarily toward protecting the speaker's commercial interests . . . ."  D.C. Code § 16-5501(3).  3M is entitled to discovery establishing that all of Davis's wrongful conduct and statements were made primarily in furtherance of his, his clients', and/or others' commercial interests, and thus not protected by the Act.

[3] Id.

reckless disregard for their truth or falsity;[4] (iv) made with actual malice;[5] and/or (iii) not otherwise privileged.[6]

  7.  Accordingly, 3M requires the opportunity to: (i) serve interrogatory requests, requests for production, and requests for admission on Defendants. 3M also seeks to take the depositions of Lanny Davis, Harvey Boulter, Adam Werrity, and a corporate representative of

---

[4] Davis repeatedly state that the facts and contentions being challenged in the Complaint are "indisputable," incapable of "serous dispute," not in "doubt," "essentially undisputed," or "substantially true." *See id.* at 11, 21-22, 29, 31. They do not cite any evidentiary support for these claims, but simply assert that "3M cannot possibly prove [Davis's] statements" are false, or not substantially true. *See id.* at 31. 3M is entitled to discovery of facts establishing that Davis that, to as each of challenged statements, Davis knew that there actually false and/or materially false. 3M is also entitled to discovery showing that the statements were not true, and their falsity went beyond "technicalities."

[5] Davis asserts, without citation, that the "facts establish" that Davis did not utter the defamatory statements – "just the opposite." *See id* at 30. 3M is entitled to discovery of facts proving that Davis, when he made the defamatory statements identified in the Complaint, subjectively knew that they were false, made with reckless disregard for their truth or falsity, made no attempt to confirm their truth or falsity, and made them with the subjective intent to cause harm to 3M.

[6] Davis asserts that: (i) the fair comment privilege applies because Davis's defamatory statements were merely expressions of his own views, entirely supported by "facts," and about a matter of legitimate public concern; (ii) protected by the common interest privilege because those same statements were made in good faith, and Davis honestly believed that he was speaking to another person on a subject on which he and the other person shared an interest; and (iii) are privileged under the *Restatement (Second) of Torts* § 598, protecting statements made to law enforcement authorities, because Davis filed the citizen's petition with the FDA. *See* Special Motion at 33-35. Davis also contends that 3M is not even entitled to prove these assertions are inaccurate *See id.* at 35 ("3M cannot possibly prove that any statements made by Davis were made in bad faith."). These arguments have no merit. Nonetheless, 3M is entitled to discovery to demonstrate that Davis's defamatory statements—including those made within the FDA filing—were made in bad faith, with the intention to harm 3M, not made to advance any public interest, and were not intended to be made on behalf of any person or entity other than Davis and his clients.

3

Tetra Strategy Ltd..[7] Such discovery is needed in order for 3M to obtain evidence, in admissible form, that will show the following:

    (i)    Defendants' actual purpose, reasons, intentions and motivations for the defamatory statements and conduct identified in 3M's complaint, including, but not limited to:

    a.  The purpose, intent, and motivation for Boulter's and Davis's oral and written communications to 3M's counsel on June 17, 18 and 19, 2011, including whether they were intended to advance the commercial interests of Davis, Boulter, other Movants, or Claimants;

    b.  The purpose, intent, and motivation for the FDA "citizen's petition," and the public statements, organized public demonstrations, press releases, websites, blogs, and other media supporting that petition, including whether they were intended to advance the commercial interests of Davis, Boulter, other Movants, or Claimants;

    c.  The purpose, intent, and motivation for the public statements, media campaign, and public demonstrations in support of Claimants' prosecution of the London Litigation including whether they were intended to advance the commercial interests of Davis, Boulter, other Movants, or Claimants;

    d.  Any other facts evidencing that the defamatory statements and conduct identified in the Complaint were not intended to further advocacy on behalf of

---

[7] Discovery from Boulter and Porton Capital will apparently have to be taken in accordance with procedures established by the Hague Convention. Porton Capital, Inc. and Porton Capital Technology Funds have been served in this case under the Hague Convention. Boulter has not yet been served, although 3M has initiated service of process on him in the U.K. under the Hague Convention. Hague Convention procedures must also be used to obtain deposition discovery from third-parties Adam Werrity and Tetra Strategy Ltd.

issues in the public interest, and/or were intended to advance the commercial interest of Davis, other Movants, Boulter, or Claimants;

(ii)     The scope and purpose of Tetra Strategy's role in assisting Boulter, Claimants, Davis, and/or other Movants with regard to any issue identified the London Litigation, or any matter relevant to 3M's claims in this lawsuit, including its role in arranging a meeting between Boulter and Fox;

(iii)    The scope and purpose of Werrity's role in assisting Boulter, Claimants, Davis and/or other Movants with regard to any issues identified in the London Litigation, or any matter relevant to 3M's claims in this lawsuit, including his role in arranging a meeting between Boulter and Fox;

(iv)    Davis's knowledge of, and/or participation in, Tetra Strategy's media and lobbying campaign in support of the "citizen's petition," the London Litigation, or any other matter relevant to 3M's claims in this lawsuit;

(v)     Davis's knowledge of the substance of Boulter's meeting(s) with then U.K. Secretary of Defence Fox in June 2011, including his role in arranging that meeting;

(vi)    The discussions that took place at the meeting between Boulter and Fox in June 2011;

(vii)   Identification of all meetings that took place between or among Werrity, Boulter, and/or Davis, including the date, time and place of such meetings, their purpose, the substance of the discussions at those meetings, any entity or person that arranged such meetings, Davis's role in arranging or participating-

in such meetings, and whether Davis, Boulter, or anyone acting on their behalf, or Claimants, paid to arrange such meetings;

(viii)   Davis's role in planning, coordinating, or advising Boulter with regard to Boulter's communications with 3M's attorney on June 18 and 19, 2011, including his role in drafting, reviewing, or discussing the contents of those communications;

(ix)   Payments made by, or on behalf of, Boulter, Davis, or others acting on their behalf, to Tetra Strategy, Werrity, and/or officials of the British government;

(x)   Contacts and communications by and/or among Davis, Boulter, Tetra Strategy Strategy, Werrity, Claimants in the London Litigatnoi, Fox and/or other persons that are members of, or employed by, the British government, and which concerned 3M, the London Litigation, or other issues raised by the claims in 3M's Complaint;

(xi)   The identification of any MRSA victims, support groups, advocates, or advocacy groups with whom Defendants in this lawsuit, or the Claimants in the London Litigation, worked, communicated, or coordinated activities with, including the identification of any leaders of such support or advocacy groups with whom Defendants or Claimants were in contact;

(xii)   Facts regarding the scope, operation, and purpose of www.mrsa-injustice.com and twitter.com/mrsainjustice, including the identification of persons working for these sites and feeds, their funding sources, and their content providers;

(xiii)   Facts regarding the scope, operation, and purpose of any other websites, twitter feeds, media portals, groups, or organizations that were organized by, at the

behest of, or funded, in whole or in part, by Defendants, or Claimants in the London Litigation;

(xiv)   Communications by Defendants, or Claimants in the London Litigatoin, to any third-party, including MRSA victims or MRSA support groups, regarding the London Litigation, the "citizens' petition," public demonstrations organized against 3M in the U.K. and/or the U.S., and or other statements and conducted identified in the Complaint, and which occurred from June 2010 to the present;

(xv)   The role of Davis, any other Defendant, or persons and entities acting on their behalf, in organizing public demonstrations against 3M, including whether any demonstrators were paid, and if so, who provided those funds;

(xvi)   The scope and purpose of Davis's interactions with other members of Claimants' legal team in the London Litigation, to include both members of employees of McDermott, Will & Emery, LLP, or Claimants' subsequent legal counsel DLA Piper, and Claimants' English barristers;

(xvii)   The scope and purpose, including services to be rendered, of Davis's representation of Boulter and/or Claimants in the London Litigation, including the identification of Davis's clients, and the person or entity that paid for Davis's services;

(xviii)   Whether Davis had access to the litigation files, disclosure material, and/or work product in the London Litigation, and if so, the specific material he reviewed, to include whether Davis reviewed, had access to, or was otherwise advised of: (a) the actual contents of, the BacLite Technical Report; (b) disclosure material in the London Litigation related to FastMan; and (c) had

knowledge, or access to knowledge, of the fact that Claimants in the London Litigation had dropped their claim that BacLite purchased BacLite in order to favor FastMan;

(xix)   Discussions and communications by, among or between Davis and any other member of the Claimants' legal team in the London Litigation, including the identity of those persons such discussions and communications were had with, and whether they were related to any statements or conduct identified in the Complaint as defamatory or wrongful;

(xx)    Facts concerning any discussions, communications, or meetings between Boulter, Davis, other Defendants, or persons acting on their behalf, and any officials or employees of the British government, including the Ministry of Defence, at which this lawsuit, the London Litigation, or 3M was discussed, including, without limitation: (i) the identification of the officials or employees with whom such meetings, communications or discussions were conducted; (ii) the date, time and place for such meetings, discussions, or communications; (iii) how, and by whom, such meetings, discussions, and communications were arranged; (iv) whether the officials and employees were remunerated in any fashion for such discussions, meetings and communications, and if so, by whom; and (v) their scope and content;

(xxi)   The factual or legal basis for Davis's claim that "thousands" of individuals that suffered MRSA-related deaths would be alive if 3M had continued to sell BacLite;

(xxii)   Facts evidencing that Davis had actual knowledge that 3M was under no obligation to submit the BacLite Technical Report to the FDA;

(xxiii)  Facts evidencing that Davis knew, or was reckless in not knowing, that the defamatory statements identified in the Complaint were actually false;

(xxiv)   What, if any, efforts Davis took to determine whether or not any of the defamatory statements identified in the Complaint were true or false; and

(xxv)    The identification of persons, entities, or organizations with whom Davis claims a "common interest" in the content of his defamatory statements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and executed by me on October 31, 2011.

Kenneth N. Hickox, Jr.

5254100.5
2124-06