UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3M COMPANY,<br><br>            Plaintiff,<br><br>       v.<br><br>BOULTER, et al.<br><br>            Defendants. | Civil Action No. 11-cv-1527 (RLW) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon remand from the Court of Appeals. While this matter was on interlocutory appeal, the District of Columbia filed a motion to dismiss its appeal and to vacate the portion of this Court's opinion that was the subject of the appeal. The Court of Appeals dismissed the appeal, and it ordered "that the case be remanded to the district court with instructions to consider the motion for vacatur as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). . . ." (Dkt. No. 96).

The Court will therefore consider the District's motion. However, before turning to the merits, a review of the procedural history is necessary.[1]

**I.  PROCEDURAL HISTORY**

The Plaintiff in this matter, 3M Company, filed an eight-count complaint against Defendants Lanny J. Davis, Lanny J. Davis & Associates, PLLC and Davis-Block LLC (collectively, the "Davis Defendants") and Harvey Boulter, Porton Capital Technology Funds and

---

[1]  A detailed recitation of the facts of the case appears in this Court's prior opinion, *3M Co. v. Boulter*, 842 F. Supp. 2d 85 (D.D.C. 2012), *appeal dismissed*, 2012 WL 5897085 (D.C. Cir. 2012), so only the most salient facts will be repeated here.

1

Porton Capital, Inc. (collectively the "Porton Defendants") asserting a number of claims, including commercial defamation, tortious interference with contract and prospective business relations, and civil conspiracy. Initially, the Plaintiff was able to complete service on all Defendants except for Harvey Boulter. Thereafter, all Defendants (except Boulter, of course) filed motions to dismiss pursuant to either Rules 12(b)(2) or 12(b)(6) of the Federal Rules of Civil Procedure. In addition, those Defendants also filed a "special motion to dismiss pursuant to the District of Columbia Anti–SLAPP Act of 2010." *See* D.C. CODE §§ 16-5501–5505. After those motions were filed, the District of Columbia sought to intervene "solely for the limited purpose of presenting argument to defend the validity of the Anti-SLAPP Act," (Dkt. No. 22 at 1), and the Court granted permissive intervention to the District pursuant to Federal Rule of Civil Procedure 24(b)(2) "only for the limited purpose of defending the District of Columbia Anti-SLAPP Act of 2010 (D.C. Code §§ 16-5502-5505)." (Dkt. No. 29 at 1).

On February 2, 2012, following briefing and argument on the various motions, the Court granted the Porton Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2), and the Court granted the Davis Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule 12(b)(6), for all claims except the commercial defamation claim. *3M Co.*, 842 F. Supp. 2d at 111-20. The Court also held that the special motion to dismiss procedure mandated by the D.C. Anti–SLAPP Act conflicts in several fundamental respects with the Federal Rules of Civil Procedure, and, accordingly, the Court held that the Act cannot apply to a federal court sitting in diversity pursuant to *Hanna v. Plumer*, 380 U.S. 460 (1965), and its progeny. *3M Co.*, 842 F. Supp. 2d at 93-111.

On February 17, 2012, the Davis Defendants noted an interlocutory appeal of the Court's order denying the special motion to dismiss. (Dkt. No. 65). On February 23, the District also

noted an appeal. (Dkt. No. 67). The Court postponed discovery on the remaining claim against the Davis Defendants, allowing the Court and the parties to monitor the progress of the appeal and the Plaintiff an opportunity to continue its attempts to effectuate service on Mr. Boulter.

Mr. Boulter was eventually served and, like the defendants before him, filed a motion to dismiss pursuant to Federal Rules 12(b)(2) and 12(b)(6). (Dkt. No. 85). In addition, Boulter also filed a "special motion to dismiss" pursuant to the D.C. Anti–SLAPP Act. (Dkt. No. 87). The Plaintiff and Boulter then stipulated that Boulter's special motion to dismiss would be held in abeyance until the Court of Appeals acted on the still-pending interlocutory appeals. (Dkt. No. 90). On October 5, 2012, the Court granted Boulter's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2). (Dkt. No. 94 (transcript)). The Court did not rule on Boulter's special motion to dismiss at that time. (*Id*.).

Subsequently, the Plaintiff reached a settlement with the Davis Defendants, and the Davis Defendants dismissed their interlocutory appeal. The settlement did not include any of the Porton Defendants.

Thereafter, the Court ruled on Boulter's special motion to dismiss—denying it. *3M Co. v. Boulter*, --- F. Supp. 2d. ----, 2012 WL 5245458 (D.D.C. Oct. 24, 2012). The Court took this action because the parties had stipulated that, if the interlocutory appeal of the Davis Defendants was dismissed for any reason, "then Mr. Boulter's special motion to dismiss shall be denied by this Court." (Dkt. No. 90). In addition, by denying Boulter's special motion to dismiss, either the District or Boulter could appeal the Court's denial and thereby obtain review of the Court's ruling on the inapplicability of the D.C. Anti-SLAPP Act. However, the Plaintiff did not appeal the dismissal of the Porton Defendants on personal jurisdiction grounds, and neither the District nor Boulter appealed the denial of Boulter's special motion to dismiss.

Instead of appealing the Court's denial of Boulter's special motion to dismiss, the District filed a motion to dismiss its interlocutory appeal and to "Vacate the Portions of the District Court Opinion and Order Addressing the District of Columbia Anti-SLAPP Act." The Court of Appeals granted the motion to dismiss the appeal, took no position on vacatur, and ordered "that the case be remanded to the district court with instructions to consider the motion for vacatur as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994)." (Dkt. No. 90). The Court will therefore follow the instructions of the Court of Appeals and consider the District's motion for relief from judgment.

## II. THE MERITS

As directed by the Court of Appeals, this Court will consider the motion to vacate its prior order as if it were a motion made to this Court pursuant to Federal Rule of Civil Procedure 60(b), which sets forth the grounds upon which a party may seek relief from a judgment or order. Of those grounds, the only one applicable in this instance appears to be the "catch-all" provision of Rule 60(b)(6), which permits a court to relieve a party from an order or judgment for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).

The District's burden for obtaining relief under Rule 60(b)(6) is quite high. It is well settled that, while this provision "provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,'" *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (quoting *Klapprott v. United States,* 335 U.S. 601, 614-15 (1949)), such relief requires "extraordinary circumstances," *id*. (quoting *Ackermann v. United States,* 340 U.S. 193, 199 (1950)), and further, that such relief

"should only be sparingly used," *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 903 (D.C. Cir. 1996) (citing *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577  (D.C. Cir. 1980)).

As noted above, the Court of Appeals also referenced *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994), so that case must be considered.  In *U.S. Bancorp*, the parties entered into a settlement agreement while the case was on appeal, and a party who had sought certiorari moved to vacate the lower court's decision.  In its analysis, the Supreme Court acknowledged that it had commonly vacated the judgment below when a civil case became moot pending a decision on the merits.  *Id*. at 22 (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)).  The Court noted, however, that vacatur was not automatic.  Instead, as the Court explained, vacatur may be justified where "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id*. at 25.  The Court concluded that no such unfairness would result where the party seeking review had settled, "hold[ing] that mootness by reason of settlement does not justify vacatur of a judgment under review." *Id*. at 29.  In so concluding, the Court reasoned that a party who settles his case "has voluntarily forfeited his legal remedy by the ordinary processes of appeal . . . , thereby surrendering his claim to the equitable remedy of vacatur." *Id*. at 25.  Significantly, the Court stated that "[i]n these respects the case *stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all*," noting that it had previously denied vacatur where the losing party declined to pursue its appeal, resulting in the appeal being dismissed for want of jurisdiction. *Id*. at 25-26 (citing *Karcher v. May*, 484 U.S. 72 (1987)) (emphasis added).  While the Court explained that "[t]his is not to say that vacatur can never be granted when mootness is produced

[because of a settlement]," the Court cautioned that it would require "exceptional circumstances" to justify the equitable relief of vacatur following a settlement. *Id.*

These are the general legal principles that govern this matter. Upon their consideration, this Court does not find that the instant motion presents a circumstance that is so "extraordinary" and "exceptional" to warrant the requested relief from judgment under Rule 60(b)(6), which, as noted above, is relief that "should only be sparingly used." *Computer Professionals for Social Responsibility*, 72 F.3d at 903.

First of all, it is not entirely clear that the District played no role in the events that prevented review of this Court's order by the Court of Appeals. The District argues that the "voluntary action exception" of *U.S. Bancorp* does not apply because the District was not a party to the settlement between the plaintiff and the Davis defendants and "did not itself take any actions to moot the appeal." Consent Motion by the District of Columbia to Dismiss Its Appeal and to Vacate the Portions of the District Court Opinion and Order Addressing the District of Columbia Anti-SLAPP Act, USCA Case No. 12-7017 (filed Nov. 13, 2012) (citing *Humane Society of the United States v. Kempthorne*, 527 F.3d 181 (D.C. Cir. 2008)). However, a major flaw with this argument is that it focuses exclusively on the Court's denial of the special motion to dismiss filed by the Davis Defendants. While the settlement between 3M and the Davis Defendants mooted *that* appeal, the District completely ignores the fact that the Court subsequently denied the special motion to dismiss filed by Defendant Boulter, which expressly incorporated the very same arguments pressed by the Davis Defendants. (Dkt. No. 93). As an intervenor in this action, the District could have separately appealed that ruling to the Court of Appeals. Had the District taken an appeal of that decision, it could have sought review of the

precise issue raised by the Davis Defendants' earlier appeal—*i.e.*, this Court's ruling that the D.C. Anti-SLAPP Act cannot apply in federal court. But the District chose not to do so.

On this point, the Court is mindful that Boulter had previously been dismissed from this case under Federal Rule 12(b)(2), for lack of personal jurisdiction. (*See* Dkt. No. 94 (transcript)). But in so ruling, the Court expressly dismissed 3M's claims against Boulter *without prejudice*, (*id*. at 32-33), leaving open the possibility that 3M could re-file its claims. Had the Court granted Boulter's alternative grounds for dismissal under the D.C. Anti-SLAPP Act, on the other hand, that dismissal would have been with prejudice. D.C. CODE § 16-5502(d). These implications are significant because, where a defendant seeks a dismissal with prejudice and only secures a dismissal without prejudice, it may nevertheless appeal the trial court's ruling to argue that the dismissal should have been with prejudice. This principle was first clearly articulated by the Seventh Circuit, in two decisions penned by Judge Posner: *LaBuhn v. Bulkmatic Transport Co.*, 865 F.2d 119 (7th Cir. 1988), and *Disher v. Information Resources, Inc.*, 837 F.2d 136 (7th Cir. 1989). Since those cases were decided, several other Circuits have followed suit. *Briscoe v. Fine*, 444 F.3d 478, 495-96 (6th Cir. 2006); *Payton v. Woodford*, 273 F.3d 1271, 1276 (10th Cir. 2001); *Farmer v. McDaniel*, 98 F.3d 1548, 1549 (9th Cir. 1996); *see also* 15A Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3914.6, at 535 (2d ed. 1991) ("[O]bviously, a defendant must be allowed to appeal a dismissal without prejudice in order to argue that the dismissal should have been with prejudice."). Further, while our Court of Appeals has not squarely applied this principle, it has cited with approval the Seventh Circuit's decision in *LaBuhn*. *Sea-Land Serv., Inc. v. Fed. Maritime Comm'n*, 137 F.3d 640, 647 n.4 (D.C. Cir. 1998) ("A prevailing party may appeal a dismissal without prejudice on the grounds that it wants one with prejudice.").

Thus, the Court's dismissal of Boulter without prejudice on personal jurisdiction grounds did not prevent Boulter—or the District, through its role as an intervenor defending the D.C. Anti-SLAPP Act—from appealing the Court's denial of Boulter's alternative grounds for dismissal under the Anti-SLAPP Act. Insofar as the District chose not to do so, it cannot now complain that the dismissal of the Davis Defendants' appeal has prevented the District from obtaining review of this Court's ruling on the D.C. Anti-SLAPP Act. As the Supreme Court noted in *U.S. Bancorp*, the equitable relief of vacatur is not appropriate where "the losing party failed to appeal at all." 513 U.S. at 25.[2]

Second, even if the District's failure to appeal the denial of Boulter's special motion does not foreclose its right to seek equitable relief, the District still has not shown extraordinary circumstances to merit vacatur. The Court finds it significant that in *Kempthorne*, upon which the District relies, our Circuit stated that "[w]e have interpreted *Bancorp* narrowly." 527 F.3d at 185. The Circuit did note that it had distinguished *U.S. Bancorp* where the appeal had become moot due to legislative action, rather than due to a settlement of the parties, *id*. at 185-86 (citing *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346 (D.C. Cir. 1997)), but that circumstance is plainly not present here. Additionally, because the District did not attempt to appeal the ruling on Boulter's motion, this case, unlike *Kempthorne*, raises the troubling possibility that "a litigant is attempting to manipulate the courts to obtain the relief it was not able to win in the judicial system." *Id*. (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1213 (10th Cir. 2005)). Further distinguishing *Kempthorne* is its reliance upon the fact that the party seeking vacatur was an intervenor as of right whose "interest was not adequately

---

[2]   Indeed, at the time the District sought vacatur in the Court of Appeals, the deadline for filing a notice of appeal from the order denying Boutler's special motion to dismiss had not even expired (less than 30 days had passed), *see* FED. R. APP. P. 4(a)(1)(A), so the issue was actually not even yet moot.

represented," *id*. at 186 n.11, but that circumstance is also not present here.  In this case, the District sought to intervene "solely for the limited purpose of presenting argument to defend the validity of the Anti-SLAPP Act," (Dkt. No. 22 at 1), and the Court granted intervention "only for the limited purpose of defending the District of Columbia Anti-SLAPP Act of 2010 (D.C. Code §§ 16-5502-5505)," (Dkt. No. 29 at 1).  Thus, the District was a permissive intervenor, which is significant because this Court's order did not affect any interest in property of the District, the District is not bound by the Court's order,[3] and the District is not precluded from litigating the applicability of the D.C Anti-SLAPP Act in future proceedings.  Indeed, the District is currently litigating this very issue in other appeals pending before this Circuit and can therefore adequately defend its interests in those actions.  *See, e.g.*, *Sherrod v. Brietbart*, USCA No. 11-7088; *Farah v. Esquire*, USCA No. 12-7055.  Thus, there is no need to vacate the decision so that "the rights of all parties are preserved," *Munsingwear*, 340 U.S. at 39-40, and this is not an instance where vacatur is necessary because the District's right to appellate consideration of the issue has been significantly impaired, s*ee Atkinson v. Prudential Property Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994) ("[E]xceptional circumstances are relevant only where they bar adequate redress.").

Third, to the extent that the purpose of Rule 60(b)(6) is to allow vacatur "whenever such action is appropriate to accomplish justice," *Klapprott*, 335 U.S. at 615, the District has not shown that justice would be served by vacatur in this instance.  As shown above, the District could have sought review of this Court's order but failed to do so, and the District is still able to seek a favorable ruling from the Court of Appeals in other pending cases.  To the extent that the

---

[3]  Furthermore, the District did not litigate this matter like a party concerned that it would be bound by any final judgment of the lawsuit—it did not participate in any of the other merits briefing in the case, it did not participate in discovery or in the scheduling conference with the Court, and it did not participate in the case in the trial court after the resolution of the Anti-SLAPP motion filed by the Davis Defendants.

District seeks vacatur because it wants to remove an unfavorable ruling from the books, "a party's desire to avoid the potential legal precedent set by an order does not qualify for Rule 60(b)(6) relief." *Tustin v. Motorists Mut. Ins. Co.*, 668 F. Supp. 2d 755, 763 (N.D. W. Va. 2009) (citing *Neumann v. Prudential Ins. Co. of Am.*, 398 F. Supp. 2d 489, 492 (E.D. Va. 2005)); s*ee also McMellon v. United States,* 528 F. Supp. 2d 611, 614 (S.D. W. Va. 2007) (noting that it is unjust in some instances to allow institutional litigants to obtain vacatur because "[f]reely granting vacatur hurts one-time players in the legal system while benefitting institutional litigants. Vacatur is requested almost exclusively by repeat-player litigants who have the greatest incentive to remove adverse precedent from the books. The repeat player, as opposed to the one-shot litigant, is principally concerned with the long-range effects of the judgment.").

Similarly, the Court finds that granting the Rule 60(b)(6) motion would not serve the public interest. *See Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 236 F.R.D. 175, 177 (S.D.N.Y. 2006) (denying Rule 60(b)(6) motion to vacate because there was a public interest in knowing the court's factual findings and legal reasoning). According to the District, the D.C. Anti-SLAPP Act requires a trial court to dismiss claims, with prejudice, and prior to conducting discovery, unless "the person claiming defamation can demonstrate a likelihood of success on the merits." (Dkt. No. 32 at 17). The District even acknowledges that the Act "requires a court to consider whether the defendant's conduct had a reasonable basis in fact" when making this determination. (*Id*. at 29). This method of adjudicating, whereby the trial court weighs the evidence and dismisses a claim with prejudice that appears factually weak at the outset of the litigation, is alien to the federal courts. There is no way to reconcile such a scheme with the Supreme Court's explanation that "when a complaint adequately states a claim, *it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations*

*or prove his claim to the satisfaction of the factfinder.*" *3M v. Boulter*, 842 F. Supp. 2d at 100 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n. 8, (2007)) (discussing Fed. R. Civ. P. 12(b)(6)) (emphasis added). Nor can such a scheme be reconciled with the admonition of our Court of Appeals that the "sharp limitations on summary judgment required by Rule 56" must be adhered to in "circumstances [that] involve the Seventh Amendment right to a trial by jury. . . ." *SmithKline Corp. v. Food and Drug Administration*, 587 F.2d 1107, 1119 (D.C. Cir. 1978) (citing *Weinberger v. Hynson, Westcott & Dunning*, 412 U.S. 609, 622 (1973)). The District's contention that the Act should be regarded an immunity defense, even if correct,[4] does not change the analysis. Indeed, the D.C. Circuit has held that Rule 56 precludes summary judgment for a defendant claiming qualified immunity where there is a genuine issue of material fact, explaining that "[w]hen considering a motion for summary judgment, a trial court's function is to ascertain whether disputed facts exist, not to try them." *McSurely v. McClellan*, 697 F.2d 309, 321 (D.C. Cir. 1982). Furthermore, the Supreme Court has held that, even where a defendant asserts qualified immunity, lower courts cannot require plaintiffs to meet a heightened burden of proof to defeat summary judgment, in part because such a special procedural rule conflicts with the Federal Rules of Civil Procedure. *Crawford-El v. Britton*, 523 U.S. 574, 594 (1998).

In sum, it cannot be gainsaid that the application of the D.C. Anti-SLAPP in federal court raises serious policy questions, and the Court does not agree that it serves the public interest to erase an opinion from the books that may contribute to the necessary and healthy debate of those questions. The opinion does not prejudice the District, for it is not binding precedent on any other judge or any other court, *see Camreta v. Greene*, -- U.S. ---, 131 S. Ct. 2020, 2033 n.7

---

[4] This Court has previously expressed its view that the Act is more akin to a "summary dismissal procedure" than a substantive right of immunity. *3M v. Boulter*, 842 F. Supp. 2d at 110-111.

(2011), and the only power it has is whatever persuasive effect its reasoning may merit. Such power will be countered by whatever persuasive effect can be garnered by the arguments of the District and other litigants. And that is how it should be.

**IT IS THEREFORE ORDERED** that the motion for relief from judgment by the District of Columbia is **DENIED**.

**SO ORDERED**.

Date: March 22, 2013

                                              ROBERT L. WILKINS
                                              United States District Judge